The next case is No. 171615, New Hampshire Hospital Association, et al. v. Dawn J. Wright. May it please the Court, Terry Morrissey for the Government, and I'd like to please reserve three minutes for rebuttal. You may. Thank you. Your Honors, CMS was not required to promulgate a new regulation to clarify that compensated costs are not uncompensated costs. This policy is an interpretive rule that just explains how to calculate uncompensated costs in a particular situation. To affirm the District Court's ruling, this Court would have to conclude that the preamble's contemporary mis-explanation of the regulation is inconsistent with that very regulation. Could you focus, which term or terms in the regulation does the comment and notice and rule purport to be interpreting? As I see your brief, you mentioned C-10 and then you mentioned C-16. I take it you're referring to those as corrected, not as originally promulgated? There were a couple of... Math errors, right? Yes, that were later corrected. At page 24 of our opening brief, we have an illustration of the two basic components of the regulation that we're talking about, the Medicaid shortfall. And as you can see, it determines the shortfall between two things, between costs incurred and Medicaid payments. And in paragraph C-11, the Medicaid shortfall is described as uncompensated care. So we know at the outset, Judge Kayaba, that we're talking about an uncompensated number and that the whole purpose of what's about to happen is to calculate an amount that's uncompensated. Now, the calculations... Let me stick with that for a second because let me suggest this, that when we read the statutory cap, let's assume there's a clear delegation to the Secretary of ability to make a choice. We have costs incurred and we have a title that says uncompensated. And then we have a delegation to make what is in effect... Let's assume that delegation allowed the Secretary to say, yes, there should be a set-off for Medicare receipts or no, there shouldn't be a set-off for Medicare receipts. And it could have done either. The regulation that got passed with notice and comment doesn't seem to do that on its face any more than it parrots the terms of the statute. C-10 refers to costs incurred and then there's a later reference to uncompensated costs. So if all the regulation does is basically parrot the statute, then why would we allow the Secretary to then exercise its delegated authority to actually flesh out whether it includes an offset for Medicare receipts or not by notice and comment rather than by doing it in the regulation? I disagree that the regulation merely parrots the statute. The regulation provides additional details. In what language in the regulation you would point to as an exercise pursuant to notice and comment of the delegated authority to make the policy choice in effect as to whether you're going to set off Medicare receipts or not? Most specifically, it's in the use of the term uncompensated costs. I think the delegation of authority that we're talking about is not a specific exercise of authority to say you count these or you don't. But it's a delegation of authority to define costs incurred generally. And that's what the regulation does. It adds detail to what costs incurred means by, for example, saying we're talking about inpatient and outpatient services, not physician services. And the regulation, you're correct, it doesn't go on to explicitly address every detail, every permutation of how this calculation might take place. But it does repeatedly refer to uncompensated care. And it's within the agency's authority to address additional questions that were not expressly addressed in the RIC. And the agency went so far as to, in the preamble to this regulation, explain exactly how uncompensated costs should be calculated. The preamble isn't issued pursuant to notice and comment. It's not the regulation. That's correct. But it does provide great insight into how the agency expected that this regulation would operate. Let me hone on it this way. Suppose we just had the statute. Is it your position that the agency could have, without notice and comment, adopted an interpretive rule that says there needs to be a set-off for Medicare receipts? Yes, that would reflect the secretary's discretion to determine uncompensated costs. So that could be done without notice and comment? Yes, I believe so. It would be merely interpreting what uncompensated costs means in that context. Now, the agency did go on to set forth a rule to elaborate on how you calculate uncompensated costs. What's your best authority for the proposition that when Congress delegates a choice like this to an agency, that the agency can make that choice pursuant to its delegated powers without notice and comment just by firing off an interpretive rule? Your Honor, interpretive rules in this Court's – sorry, the Supreme Court's decision in Mortgage Bankers describes interpretive rules as rules that interpret statutes and regulations. I don't think that the agency has less authority to interpret statutes that it administers simply because there's an express – Yes, but to make an interpretation of this type, because it does seem the statute leaves open what you're to do with the Medicare costs or not. It's not just, quote-unquote, interpreting a rule. It seems to be making a choice between two potential options here. It makes a choice between two options of whether you count these third-party payments or not, which is exactly what the agencies did in Worder, for example, where the agency had to make a choice between how you calculate a particular – excuse me, how do you classify a particular medical device? Is it a brace or is it durable medical equipment? And the Supreme Court in Guernsey Memorial Hospital also had to make a choice. Do you amortize a refinancing loss or do you not? That's the same inquiry that this Court is asked to undertake. But if you can make a substantive policy choice of this sort solely by an interpretive rule derived directly from the statute, that pretty much eliminates any necessity at all for ever doing notice and comment rulemaking. I always thought that substantive policy choices had to be the subject of notice and comment rulemaking. It would certainly depend on the language that was being interpreted, Your Honor. And it all would come down to the same inquiry here, which is whether a rule is legislative or substantive. And the EPA is the only constraint on whether an agency can act through a legislative rule or a substantive rule. And here, it's not the case that the agency is simply interpreting the statute. The agency is interpreting its regulation. And the regulation repeatedly refers to uncompensated costs. We're right now trying to understand your position, because I think you may have a problem if you couldn't do this to the statute unless you added something, some clarity that you could then interpret in the reg. And I was somewhat taken aback by your answer that this could just be done. They could have just taken the statute and issued an interpretive rule. It seems whether Medicare costs are offset or not is a pretty substantive thing. And I'm having trouble thinking if that's not substantive, then why do our federal government agencies ever bother with regulations? Why don't they just do everything by notice? And, Your Honor, the agency here did proceed through notice and comment by adding a lot of contour to what uncompensated costs in the statute means What language does the reg. add that you would point to as answering this question about Medicare costs, Medicare receipts? It describes uncompensated care. Which is a term in the title of the statute. It is, but it goes on to divide it into uncompensated care of treating uninsured patients and uncompensated care of treating Medicaid patients. And all it's doing is adding a series of definitions as to what is to be included in a report. We also use the term costs incurred, which has frequently been interpreted as cases noted at page 27 of our brief show to reflect offsetting payments. But costs incurred is also in the statute. In fact, that's the precise term that precedes, I believe, the parenthetical in the statute that delegates to the secretary the ability to define them. That's correct. The regulation repeatedly refers to costs incurred in the context of calculating uncompensated payments. These are very substantial payments that hospitals are receiving and they're simply not uncompensated care. No hospital looking at this regulation could reasonably conclude that it's appropriate to count all of the uncompensated costs of treating these Medicaid-eligible patients and none or very little of the corresponding payments. As the payer of last resort, Medicaid is paying generally last. So there will often be a zero in paragraph C9. These hospitals would then count all of the costs, millions of dollars, of treating these patients and still reflect those as uncompensated care. Well, what's that composition when you say that no hospital would do that? In the course of the adoption of this regulation, the agency repeatedly said, as I understand it, that it was not intending to change the accounting modality. It was intending to reflect existing practice in 2008 when it adopted the regulation. Is that correct? Yes. The practice up to 2008 of hospitals, as I understand it, was not to make the payment deductions that you are now urging should be encompassed within the regulation. Judge Selye, we don't know exactly what hospitals were doing prior to that date. Are you sure? I mean, the cost reports were coming to you. From some of the litigation we've become aware that some hospitals were counting none of the costs of treating these patients and none of the payments, and that is what the question posed in the preamble suggested. Counsel, excuse me. The plaintiffs assert that for years, I guess going back to 1995, each year CMS has to approve the state Medicaid plan, and CMS was routinely approving state Medicaid plans that did not reflect the policy that you're now advocating based on FAQs 33 and 34. Is that incorrect? Your Honor, the state plans were speaking generally about the uncompensated cost calculation that's in the statute. The state plans said nothing about how to account for third-party payments. So CMS has never said that third-party payments should not be deducted. But that's not the question. The question is for over a decade apparently hospitals are doing it one way with respect to an item that you have just said is a major item, Medicare receipts, and CMS either, we must assume, didn't notice or then acquiesced. Your Honor, CMS was not receiving, this really came to light in the beginning of fiscal year 2011 because that's when the audits started to reflect and CMS started reviewing the audits to determine whether it needed to recoup an overpayment. And so prior to that date, that fiscal year, CMS was not taking any action with respect to these audits. It was really not an issue that was on CMS's radar as far as I can tell. So what's the basis for CMS then saying five times in the preamble that they weren't making any substantive change to the way things were being done? Because, Judge Katta, this is and always has been about calculating uncompensated costs. That is not a change. Every time CMS has addressed this question, it's consistently said that third-party payments should be deducted. Even going back to 2002, we do cite a letter from CMS to state Medicaid directors. It doesn't address the question in the same fulsome manner as the preamble and the FAQs, but it does say that uncompensated costs should be net of Medicaid payments and third-party payments. It turns out that in 2004, in a comparable letter, that point was simply not made. I believe it's a 1994 letter, and that letter said nothing about third-party payments. Ninety-four, excuse me. Pointers in the district court have drawn a lot of negative implications from various pieces of guidance as well as the regulatory text, and those negative implications are simply not warranted in this context where we're talking about a Medicaid shortfall and trying to determine what Medicaid does not cover to figure out what costs are uncompensated. I know we're taking over your time, but this is an important issue. Of what practical effect is the ruling in this case? Usually we don't always even allow an appeal from a challenge to a statement of policy. If we leave the district court order in place, what effect is that going to have, particularly given the new regulation that's now been adopted is effective? Then the district court's ruling would be in effect through fiscal year, mid-year 2017, the new regulation. So you can't cite or use the policy? In New Hampshire, the injunction would remain in place as to these hospitals. As a practical matter, the way CMS has approached that is to just say that it will not enforce these policies. But it could still enforce the reg, right? It could enforce the reg. The reg does not go into effect until... No, the old reg. I'm sorry, the old reg. It can enforce the statute. I don't think CMS would risk contempt. The injunction states that it's enjoining CMS's policies reflected in the preamble. So you're reading the injunction as enjoining you from taking a position that any of the hospitals should net out these costs. That's the policy that has been enjoined. Should net out these costs before the new reg is effective. I'm sorry, Judge Slahan? Before the effective date of the new reg. Correct, yes, so long as the notice and comment issue is in play. The new reg would remedy that from June 2nd. Services rendered on or after June 2nd, 2017. If there are no further questions, I may adjourn. Thank you. May it please the court, Scott O'Connell and Morgan Nyan on behalf of the New Hampshire Hospital Association and the four hospitals that are lead plaintiffs. A simple statement of this case is that when the government wants to make a substantive change to a program it administers, it's got to follow the law, and that necessarily means notice and comment. Back to Judge Cayetta's question to opposing counsel. We're unaware of any authority that would allow the secretary to simply parrot the language and make a regulation without notice and comment. In fact, the transitional hospital corporation case out of the D.C. Circuit says when you've got a situation which we have here, where the secretary is vested with certain discretion to make judgments, it absolutely has to be with notice and comment because that discretion needs to go through the due process and the opportunity for notice and comment. There's got to be final agency action, and anybody who agrees needs the ability to bring that forward to federal court. So this notion that they could simply make an interpretive rule that makes a substantive change does not exist in any law. What about the argument that simply using the language costs incurred in a statute that's referenced to uncompensated costs, combined with what seems to be the common sense that you wouldn't be reimbursing hospitals for something that they've already been reimbursed for, but that all makes the secretary's position so obviously in tune with the statute that we don't need to be worried? Several issues with that, Your Honor. There is some intuitive appeal to the argument that there should not be double payment for services rendered. However, as the court noted during the passage of the 2008 rule, the 42 CFR 447.299, every reference to offsetting costs is to a Medicaid payment. And in fact, the Medicaid Act specifically says net of payments under this subsection, which means Medicaid. What the secretary would like to do, and perhaps it's good policy, and perhaps it's something that will sustain challenge because we do have a challenge against the final rule, but that's not before the court. At the end of the day, you can only make that kind of change, go beyond the Medicaid Act's plain language of netting out costs from this subsection, and go to another act, Medicare or third-party payer, after you do notice and comment. That's just due process. It is striking to me that in your briefing, you barely attempt to defend the position that you're advocating for on policy grounds. You probably invoke administrative law principles to criticize what the government is doing. But given the argument that this is a kind of windfall, that the hospitals are receiving double payment to the combination of the DSH payments and the third-party payments they're receiving, that that is incompatible with what Congress had in mind when it imposed these payment constraints. What is your policy defense?  I would simply note that there is an amicus brief which deals with some of this on behalf of children's hospitals. Our position, which was not fully developed below, which is why it's not as much of a part of our brief, is that uncompensated care in the context of this statute is always meant uncompensated by Medicare. It's as if it has been read into that. Uncompensated by Medicare? I'm sorry, Medicaid. Sorry, sorry, sorry. By Medicaid. Let me say that again because I got it wrong. My apologies. The Medicaid statute has always taken the position that payments from the subsection needed to be applied. And it is silent as to Medicare or third-party payments. Now, with regard to what this means, Medicaid only pays a fraction of the total. The DSH program is to make up a balance, and in many circumstances it doesn't make it to 100%. We all know that Medicare in America is a complicated issue. These are hospitals providing life-saving services to people for which they're not getting full credit. In certain circumstances where there's dual eligibility, there may be an overpayment. But that was a choice that existed at the time the Medicaid Act was passed. And there's no suggestion and nothing in the record that the government can point to that said Congress wanted to handle dual eligibility differently. It was an issue then, and they made the choice, that because of the financial position which is precarious for these hospitals, because they're doing a disproportionate amount of indigent work in the health care space, that any overage could be tolerated in the circumstance. Now, the Secretary wants to change that. And we understand that the Secretary wants to change that. They've come forward with a new rule. They've ignored all of the feedback they've gotten from the hospital community on that point. And the policy choice, Judge Lopez, that you raise is squarely going to be decided by the District Court in New Hampshire on the new challenge to the regulation. But here, you don't get to the policy because it's so procedurally flawed. The Administrative Procedure Act has three provisions that are applicable. Judge McCafferty went through meticulously and said why this was arbitrary and capricious and why it was beyond the scope of what the Secretary could do with regard to his discretion. And as a consequence, it could not stand. Back to the question of Judge Kayyad about the implications if somehow this were rolled back. The implication for the New Hampshire hospitals was a $50 million swing. Had the injunction not been issued and stopped the application of this new sudden of change, New Hampshire hospitals, because of the state plan and an agreement that has been reached by hospitals in the state of New Hampshire, would have received $50 million less funding. This year, it may be as high as $75 million. And then that would be under the new regulation, getting back to Judge Cillia's question. We have a new regime in place now. It's not just commentary from the Secretary without notice and comment, which the FAQs were, which have no force of law, and it's not clarifying because as the court was recognizing their own questions, and as Judge McCafferty noticed below, there is just no record that the dual eligibility issue had been handled as the states, as the government has suggested. I'm not sure I understood your answer to Judge Lopez's question. Are you saying that when Congress was motivated by what was going on to pass a cap statute, that in passing that cap statute was willing to tolerate or allow hospitals to get paid, reimbursed more from all government sources than their actual costs? Well, the answer to that is in the plain language of the statute. It says net of payments under this subsection. It could have simply said net of all payments. Well, that begs the question of what costs incurred mean. Sometimes costs are your gross costs. Sometimes they're your net costs. Well, at the end of the day, the way this program has been administered, and the subject of change is that it has been net of costs. Medicare. Sorry. I think the question was, why would Congress have wanted to do that? Well, in this discrete circumstance, which is a limited population, some overfunding with regard to this limited population because of the excess expense associated with some of these trustee instances. If I understand what you're saying, there was a recognition that there will still be, even if one considers the authorized Medicaid payments for a service, even if one considers the DSH payments, there will still be a Medicaid shortfall. In the aggregate. Yes, in the aggregate. Correct. And so Congress recognizing that was willing to address that Medicaid shortfall by sort of not factoring into the revenue streams the Medicare payments or the private insurer payments. Is that essentially right? That's exactly right, Your Honor. I've said better than I tried to earlier. Is there a single line in the legislative history that indicates that? The closest we come, Judge Celia, is the program for DSH is to make sure that hospitals that are dealing with disproportionate share of indigent patients are financially supported. And so the notion that there is no direct addressing of this notion of dual eligibility. The record is silent, but the point of the program is that in the aggregate, Judge Lopez, the point is to make sure that the gap that exists from what it actually costs to serve these patients is limited as much as possible. And that's the hole that DSH is intended to fill. And there are going to be circumstances where individual cases may over-realize a payment, but the vast majority under-realize. At the end of the day, in the aggregate, this is to stabilize the health delivery system for critical access hospitals, which are small and more vulnerable and larger systems. And this is the policy choice that was made by the specific language of the Medicaid Act, which again said net of payments under this section. They could have said net of all payments. It would have been a simple choice, third-party payments, Medicare. Further evidence that bolsters my argument on this point, Your Honors, is that in 2008, when they passed the regulation, there was no reference except in the preamble, as you heard from opposing counsel, but the specific costs to be denoted out are all Medicaid costs. They could have at that point in time, had it been the view of the Secretary, passed a regulation that said third-party payments and Medicare payments in this unique circumstance needs to be accounted for. That is not the case. As a consequence, the Secretary is trying to make a substantive change of law. It absolutely requires notice and comment. The district court below was right to find the violations of the APA and was right to adjoin the policies. Unless there are further questions, I'll rest on my brief and ask that you affirm the decision below. Thank you. Your Honors, do I have any remaining time for rebuttal? Yes, we burned up a little of your time, so we'll give you your full three minutes. I appreciate it. Thank you. To Judge Lopez's question regarding policy, plaintiffs offer no policy argument in their brief or really here to justify why hospitals should be permitted to count all of the costs and none of the payments associated with treating these patients. To Judge Selye's point, the congressional history is very clear that Congress wanted these dish payments to help hospitals meet the costs of treating uninsured and Medicaid-eligible patients without exceeding the net costs and to help hospitals that do not have large numbers of privately insured patients. Plaintiffs' approach does exactly the opposite. It allows comparatively wealthier and better-insured hospitals who have large populations of privately insured or Medicaid-dual-eligible patients to receive the highest dish payments under federal law, rationing up their uncompensated costs with the costs of treating these patients and having to deduct none of the associated payments while, meanwhile, hospitals that treat more Medicaid-only patients have to count both the costs and all of the Medicaid payments and do not have these substantial third-party payments to help them fill the gap and meet those costs. But even if we agree that there is a compelling policy rationale for your argument, that doesn't get you over the hump of explaining why you're able to effect this point, which you overlooked in the notice and comment regulation, through an interpretive ruling when the effect of what you're doing is definitely a change in previous practice and substantive in nature. Your Honor, again, I disagree that it's a substantive change. The regulation refers to Medicaid payments. That makes sense. Those are the most obvious form of payments. We're talking about the uncompensated costs of treating Medicaid patients. So, of course, Congress and the Secretary refer to Medicaid payments, and we're calculating a Medicaid shortfall. So, of course, we're going to look at, you know, net out costs and payments that are associated with these patients besides Medicaid payments and then compare the Medicaid payments. The regulatory – the Second Circuit in HALO said it does not make sense to interpret regulatory text outside of – without looking at the preamble. The preamble here is really clear on this point. All CMS is trying to do is ensure that the hospitals that need these funds the most receive them. In most cases, in most states, these funds will be redistributed to other hospitals that are eligible. That's a laudable goal, but as you know, the government has to turn square corners. So the question here is really a procedural question. Has CMS gone about this the right way? That's the question. I understand, Ursula. I would point the court to this court's decision in Aviators where it said that the question is the original meaning of the regulation, and it even looked to what the original intent of the agency was. The court did not have the benefit of a preamble in that case or in order, making this case much easier to determine what the agency really meant in the regulation. I must say, counsel, the district court really deconstructed that preamble at great length, and in that deconstruction of it did not find, found virtually no support for the position that you're advocating, particularly the preamble kept emphasizing no substantive change, no substantive change, no substantive change from the statutory scheme, and yet you're saying that preamble, in fact, justifies what you're doing. Absolutely. The preamble threw out with me and said there's no substantive change in that, for example, we're not going to count compensated costs as uncompensated costs. The policy has always been to calculate uncompensated costs. I think anyone at CMS would have been surprised at the time if you told them that these sorts of payments should be ignored in a calculation of uncompensated costs. Thank you, counsel, for your opinion and for the excellent briefs that we were given in this case. Thank you.